**United States District Court**
For the Northern District of California

1

2

3

4

5                           **NOT FOR PUBLICATION**

6                  IN THE UNITED STATES DISTRICT COURT

7

8                  FOR THE NORTHERN DISTRICT OF CALIFORNIA

9    JORGE GARCIA,                              No. CV 07-6012 JSW

10              Petitioner,                     **ORDER DENYING PETITION**
                                                **FOR WRIT OF HABEAS CORPUS**
11       v.

12   ROBERT HOREL,

13              Respondent.

14   _____/

15                           **INTRODUCTION**

16       Now before the Court is the Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C.

17   § 2254 filed by Jorge Garcia ("Garcia"), a California state prisoner incarcerated at Pelican Bay

18   State Prison.  For the reasons stated below, the Petition is denied.

19                       **PROCEDURAL BACKGROUND**

20       On November 29, 2004, an Alameda County jury convicted Garcia of premeditated

21   attempted murder and assault with a firearm.  The jury also found that allegations supporting a

22   firearms use enhancement to be true.  On March 18, 2005, the court sentenced Garcia to life in

23   prison for attempted murder, plus 25 years-to-life for discharge of a weapon causing great

24   bodily injury during the commission of a crime.

25       Garcia appealed his conviction to the California Court of Appeal.  On September 14,

26   2006, the court filed an unpublished opinion affirming the conviction.  (*See* Docket No. 18

27   (Respondent's Exhibits to Answer, Ex. A).)  On November 29, 2006, the California Supreme

28   Court affirmed the judgment of the Court of Appeal without opinion.  (*Id.*, Ex. C.)

1    Garcia subsequently filed petitions for habeas corpus in the California Court of Appeal and the

2    California Supreme Court, which were denied.  On November 28, 2007, Garcia filed the instant

3    petition in this Court.  (Docket No. 1.)  Respondent filed his Answer on December 22, 2008

4    (Docket No. 17.)  Garcia filed his Traverse on January 20, 2009.  (Docket No. 20.)

5        On March, 25, 2009, this Court issued an Order to Show Cause regarding the exhaustion

6    of one of Garcia's claims regarding alleged prosecutorial misconduct.  (Docket No. 22.)  Garcia

7    filed his response on April 9, 2009.  (Docket No. 23.)  Respondent filed his response on April

8    20, 2009.  (Docket No. 26.)

9                                    **FACTUAL BACKGROUND**

10       The facts underlying the commitment offense are summarized as follows:[1]

11           On August 24, 2003, shortly before 10:30 p.m., 16-year-old Ben Cruz
     was sitting with a friend in a park in Fremont.  Cruz was a member of the
12   Norteño street gang and was wearing clothing that identified him as a member
     of that gang.  The park was known to be a place where Norteños congregate.
13

14           Cruz and his friend noticed a car circling the park.  After several trips
     around, the car stopped under a street light.  Someone got out, yelled a term
15   that is derogatory to Norteños, and threw a bottle at Cruz's friend.  Appellant
     then got out of the car carrying a shotgun.  Without saying a word, he lifted
16   the shotgun and pointed it at Cruz.  Cruz saw the weapon and started to run.
     Appellant fired.  The shot hit Cruz.  He stumbled to a nearby house and
17   banged on the front door.  The residents inside refused to admit him but they
     did call the police.

18           The police arrived and found Cruz lying on the porch bleeding from
     his abdomen.  He told one of the officers that he had been shot by members
19   of the Sureños, a rival street gang.  Although Cruz did not know the name of
     the shooter, he believed he could recognize him.  He provided a description
20   of the car the suspects were driving.

21           A few minutes later, a police officer on patrol saw a car that matched
     the description of the one that was involved in the shooting.  He stopped it.
22   The driver, Alfonso Martinez, did not have a license.  He did however, have
     a Sureños tattoo on his forearm and was wearing clothing that indicated he
23   was a member of that gang.  The officers arrested Martinez and towed his car.
     During an inventory search, a camera loaded with film was located.  The
24   pictures on the film showed Martinez, appellant and others at a beach making
     gang signs and showing gang symbols.
25

26           Detective Jason Lambert, an expert in gang-related crime, was
     assigned to investigate the shooting.  He contacted appellant two days after

27
     ─────────────────────
28        [1]    The facts in this section are derived from the opinion of the Court of Appeal
     of the State of California, First Appellate District, affirming the judgment of the Superior
     Court.

                                              2

1 the crime.  Appellant told Lambert that on August 24, 2003, he went to the
beach at Half Moon Bay.

2

3            Another detective went to visit Cruz while he was in the hospital.
Cruz was medicated on morphine at the time.[2]  The detective showed Cruz
a photographic line-up of possible suspects.  Cruz identified someone other
4 than appellant saying he "possibly" could have been the shooter.

5            About 10 weeks later, Detective Lambert went to Cruz's house and
showed another photographic line-up.  This time Cruz identified appellant as
6 the shooter saying he was 100 percent certain.  Cruz said that if he could see
the person face to face, he could identify him.

7

8            A live line-up was arranged.  Again, Cruz identified appellant as the
shooter.

9 (Exhibit A at 2.)

10                          **GROUNDS FOR RELIEF**

11           Garcia raises four claims for relief in his Petition.  First, Garcia claims that the

12 prosecutor improperly referred to matters during closing argument that were outside the

13 evidence presented at trial and misrepresented evidence that had been presented at trial, in

14 violation of his Fifth and Fourteenth Amendment rights to due process.  (Petition at 7:10-24.)

15 Second, Garcia claims that the prosecutor misstated applicable law in violation of his Fifth and

16 Fourteenth Amendment rights to due process.  (*Id.* at 7:25-8:2.)  Third, Garcia raises a claim for

17 ineffective assistance of counsel based on trial counsel's failure to object to the improper

18 argument, to request admonitions, and to move for a new trial.  (*Id.* at 8:3-5.)  Finally, Garcia

19 claims that the cumulative effect of these errors deprived him a fair trial in violation of his Fifth

20 and Fourteenth Amendment rights to due process.  (*Id.* at 8:6-7.)

21                              **ANALYSIS**

22 A.     **Standard of Review.**

23           This Court may entertain a petition for a writ of habeas corpus "in behalf of a person in

24 custody pursuant to the judgment of a state court only on the ground that he is in custody in

25 violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a); *see*

26 *also Rose v. Hodges*, 423 U.S. 19, 21 (1971).  Because the petition in this case was filed after

27 _____

28        [2]     As discussed below, the record indicates that Cruz was sedated on Vicodin,
not morphine, when he reviewed the first photo line up.  This error does not affect the
Court's analysis.

*United States District Court*
For the Northern District of California

1    the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"),

2    AEPDA's provisions apply.  *Jeffries v. Wood*, 103 F.3d 827 (9th Cir. 1996) (en banc).

3         Under AEDPA, a federal court may only grant a petition challenging a state conviction

4    or sentence if the petitioner demonstrates that the state court's adjudication of the claim: "(1)

5    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly

6    established Federal law, as determined by the Supreme Court of the United States; or (2)

7    resulted in a decision that was based on an unreasonable determination of the facts in light of

8    the evidence presented in the state court proceeding."  28 U.S.C. § 2254(d).  It is the habeas

9    petitioner's burden to show he is not precluded from obtaining relief by § 2254(d).  *See*

10   *Woodford v. Visciotti*, 537 U.S. 19, 25 (2002).

11        Under § 2254(d)(1), a state court decision is "contrary to" clearly established United

12   States Supreme Court precedent "if it applies a rule that contradicts the governing law set forth

13   in [Supreme Court] cases, 'or if it confronts a set of facts that are materially indistinguishable

14   from a decision'" of the Supreme Court and nevertheless arrives at different result.  *Early v.*

15   *Packer*, 537 U.S. 3, 8 (2002) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)).  Under

16   the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may grant the writ

17   if the state court identifies the correct governing legal principle from the Supreme Court's

18   decisions, but unreasonably applies that principle to the facts of the prisoner's case.  *Williams*,

19   529 U.S. at 413.

20        A federal habeas court "may not issue the writ simply because that court concludes in

21   its independent judgment that the relevant state-court decision applied clearly established

22   federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."  *Id.*

23   at 411.  The objectively unreasonable standard is not a clear error standard.  *Lockyer v.*

24   *Andrade*, 538 U.S. 63, 75-76; *Clark v. Murphy*, 331 F.3d 1062, 1067-69 (9th Cir. 2003), *cert.*

25   *denied*, 540 U.S. 968 (2003).  After *Lockyer*, "[t]he writ may not issue simply because, in our

26   determination, a state court's application of federal law was erroneous, clearly or otherwise.

27   While the 'objectively unreasonable' standard is not self-explanatory, at a minimum it denotes a

28

**United States District Court**
For the Northern District of California

4

1    greater degree of deference to the state courts than [the Ninth Circuit] ha[s] previously afforded

2    them." *Clark*, 331 F.3d at 1068.

3           In determining whether the state court's decision is contrary to, or involved an

4    unreasonable application of, clearly established federal law, a federal court looks to the decision

5    of the highest state court to address the merits of a petitioner's claim in a reasoned decision.

6    *LaJoie v. Thompson*, 217 F.3d 663, 669 n.7 (9th Cir. 2000); *Packer v. Hill*, 291 F.3d 569,

7    578-79 (9th Cir. 2002), *rev'd on other grounds*, 537 U.S. 3 (2002).  The standard of review

8    under AEDPA is somewhat different where the state court gives no reasoned explanation of its

9    decision on a petitioner's federal claim and there is no reasoned lower court decision on the

10   claim.  In such a case, a review of the record is the only means of deciding whether the state

11   court's decision was objectively reasonable.  *See Himes v. Thompson*, 336 F.3d 848, 853 (9th

12   Cir. 2003).

13          A federal habeas court may also grant the writ if it concludes that the state court's

14   adjudication of the claim "resulted in a decision that was based on an unreasonable

15   determination of the facts in light of the evidence presented in the State court proceeding."  28

16   U.S.C. § 2254(d)(2); *Rice v. Collins,* 546 U.S. 333, 338 (2006).  A district court must presume

17   correct any determination of a factual issue made by a state court unless the petitioner rebuts the

18   presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).  This

19   presumption is not altered by the fact that the finding was made by a state court of appeal, rather

20   than by a state trial court.  *Sumner v. Mata*, 449 U.S. 539, 546-47 (1981); *Bragg v. Galaza*, 242

21   F.3d 1082, 1087 (9th Cir. 2001), *amended*, 253 F.3d 1150 (9th Cir. 2001).

22          Habeas relief is warranted only if the constitutional error at issue is structural error or

23   had a "'substantial and injurious effect or influence in determining the jury's verdict.'"  *Penry*

24   *v. Johnson*, 532 U.S. 782, 796 (2001) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 637

25   (1993)).  Under this standard, if the federal court determines that the state court's harmless error

26   analysis was objectively unreasonable, and thus an unreasonable application of clearly

27   established federal law, the federal court then proceeds to the *Brecht* analysis.  *Id.* at 787.

28

United States District Court

For the Northern District of California

**United States District Court**
For the Northern District of California

1    In addressing Garcia's habeas corpus claims, this Court looks to the last reasoned state

2    court opinion rejecting the federal claims.  *See Shackleford v. Hubbard*, 234 F.3d 1072, 1079 n.

3    2 (9th Cir. 2000) (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991)).  Here, Garcia

4    brought Constitutional claims on direct appeal and in a state habeas petition.  The appellate

5    court on direct appeal is the highest state court to issue a reasoned decision on Garcia's federal

6    claims.  Therefore, this is the opinion which this Court considers.

7    **B.    Garcia Is Not Entitled To Habeas Relief Based on His Claims of Prosecutorial**
     **Misconduct.**

8

9    Garcia maintains that his constitutionally guaranteed due process rights were violated

10   by prosecutorial misconduct during his trial.[3]  He contends that the prosecutor improperly

11   referred to evidence outside of the record and mischaracterized other evidence during his

12   closing argument.  Furthermore, Garcia argues that the prosecutor misstated applicable law and

13   made comments that impermissibly altered the burden of proof.  The California Court of Appeal

14   found that no prosecutorial misconduct occurred during trial.

15   **1.    Legal Standard.**

16   A defendant's due process rights are violated when a prosecutor's misconduct renders a

17   trial fundamentally unfair.  *See Darden v. Wainwright*, 477 U.S. 168, 182-83 (1986); *Smith v.*

18   *Phillips*, 455 U.S. 209, 219 (1982) ("the touchstone of due process analysis in cases of alleged

19   prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor").

20   Under *Darden*, "the first issue is whether the prosecutor's remarks were improper and, if so,

21   whether they infected the trial with unfairness." *Tan v. Runnels*, 413 F.3d 1101, 1112 (9th Cir.

22   2005).  A prosecutorial misconduct claim is decided "on the merits, examining the entire

23   proceedings to determine whether the prosecutor's remarks so infected the trial with unfairness

24   as to make the resulting conviction a denial of due process." *Johnson v. Sublett*, 63 F.3d 926,

25   929 (9th Cir.) (citation and quotation omitted), *cert. denied*, 516 U.S. 1017 (1995).  To prevail

26   _____

27      [3]    Respondent argues that Garcia's claims of prosecutorial misconduct are
     procedurally defaulted, because his counsel did not object to any of the challenged comments
28   during trial.  Garcia contends that his counsel's failure to object constituted ineffective
     assistance of counsel, and, therefore, his claims are not barred.  Because the Court finds that
     Garcia's claims fail on the merits, it does not address this issue.

6

United States District Court
For the Northern District of California

1   on a claim for habeas relief based on trial error, the petitioner must establish that it resulted in

2   actual prejudice, that is, that the error "had substantial and injurious effect or influence in

3   determining the jury's verdict." *Brecht*, 507 U.S. at 637-38 (citing *Kotteakos v. United States*,

4   328 U.S. 750, 776 (1946)).

5   **2.    Analysis.**

6   **a.    Garcia is not entitled to habeas relief on his claims that the
           prosecutor mischaracterized evidence and referred to evidence

7            outside the record during closing argument.**

8   As noted Garcia premises his claims for relief for prosecutorial misconduct based on

9   claims that during closing argument the prosecutor mischaracterized evidence and referred to

10  evidence outside of the record.  Garcia premises this claim on the following six portions of the

11  prosecutor's closing argument.

12  **i.    The prosecutor's reference to Islamic law.**

13  During his closing argument, the prosecutor discussed the eye witness testimony of the

14  victim, Ben Cruz, drawing a comparison between American law and Islamic law.  Paraphrasing

15  CALJIC No. 2.27 he stated:

16          You should give the testimony of a single witness whatever weight you think
            it deserves.  Testimony concerning any fact by one witness which you
17          believe is sufficient for the proof of that fact.  I'm reminded sometimes that,
            you know, we come across in jury selection, I think it's actually common in
18          the Islamic religious faith, that for certain crimes, they say you absolutely got
            to have two witnesses or we're not going to be convinced.  Well, you don't.
19          You know, freedom of religion.  And that's the prerogative of folks in that
            system which adopt that particular technique.  But under our constitutional
20          representative republic, we have agreed to abide, all of us, by the laws we
            have together, and we have agreed that there are situations in which
21          testimony of one witness is sufficient.  Obviously you should carefully
            review all of the evidence upon which the proof of that fact depends.
22

23  (Respondent's Exhibit D (Reporter's Trial Transcripts at 479-81 (herein after "RT").)

24  Garcia argues that there was no evidence in the record relating to the Islamic religion,

25  and the prosecutor's reference to the topic violated his due process rights.  He contends that in

26  light of increased hostility toward Islam in the wake of the September 11, 2001 attacks and the

27  ongoing wars in Afghanistan and Iraq, the jury could have understood the prosecutor's

28  reference to Islam to mean that a decision to acquit would be unpatriotic and run contrary to

1   principles of American law.  The California Court of Appeal disagreed, holding that the

2   prosecutor's brief reference to Islamic law did not amount to misconduct.  (Exhibit A at 5,

3   *citing People v. Gionis*, 9 Cal. 4th 1196, 1219-20 (1995) (holding that a prosecutor's quoting

4   from the Bible during closing statements was not misconduct because the reference was brief

5   and not calculated to appeal to the religious prejudices of the jury).)

6          The Ninth Circuit has held that "appeals to racial, ethnic, or religious prejudice during

7   the course of a trial violate a defendant's Fifth Amendment right to a fair trial."  *United States v.*

8   *Nobari*, 574 F.3d 1065, 1073 (9th Cir. 2009) *quoting United States v. Cabrera*, 222 F.3d 590,

9   594 (9th Cir. 2000).  Specifically, clearly established federal law provides that such

10  prosecutorial conduct "violates a criminal defendant's due process and equal protection rights."

11  *Bains v. Cambra*, 204 F.3d 964, 974 (9th Cir. 2000).  However, not all references to religion

12  violate due process.  Courts have found misconduct only when a prosecutor's references to

13  religion were pervasive and inflammatory.  *Compare United States v. Amlani*, 111 F.3d 705,

14  714 (9th Cir. 1997) (finding no misconduct in a prosecutor's reference to religion because it

15  was isolated and immediately followed by discussion of the correct legal standard governing the

16  case) *with Bains*, 204 F.3d at 974-75 (prosecutor committed misconduct by extensively

17  discussing stereotypes of members of the Sikh religion, including asserting that Sikhs were

18  predisposed to violence, and unable to assimilate to or comply with the laws of the United

19  States).

20         In this case, the prosecutor's comments were brief, and also included discussion of the

21  correct legal standard, CALJIC No. 2.27, regarding how to weigh witness testimony.  The

22  comments did not appeal to religious prejudices or seek to inflame the jury.  Accordingly, the

23  prosecutor's comments were not improper.  The state court decision was not contrary to, or an

24  unreasonable application of clearly established federal law, or based on an unreasonable

25  determination of the facts in light of the evidence presented, and Garcia is not entitled to relief

26  on this claim.

27  //

28  //

United States District Court

For the Northern District of California

8

**United States District Court**
For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ii.     **The prosecutor's reference to Garcia's expert's fees.**

During cross examination, the prosecutor elicited testimony that Dr. Shomer, an expert witness for the defense, typically charged $150 an hour for work on a case, with a cap of $2,500.  Additionally, Dr. Shomer testified that he served as a defense expert approximately four hundred times, though he received a lower fee of $500 in approximately 300 of those cases. (RT at 434-35.)  However, the prosecutor did not ask specifically how much he had been paid for work on Garcia's case.  In addition, during his closing statement, the prosecutor argued that Dr. Shomer had been paid a "tremendous amount of money" to testify for the defense.  Garcia contends that the prosecutor improperly referred to and mischaracterized the amount of fees paid to Dr. Shomer.

The California Court of Appeal found that the comment was not misconduct and did not violate Garcia's due process rights.  (Exhibit A at 6.)  Prosecutors are allowed to draw reasonable inferences based on evidence in the record.  *United States v. Atcheson*, 94 F.3d 1237, 1244 (9th Cir. 1996).  The prosecutor's inference that Dr. Shomer had been paid to testify on behalf of Garcia was reasonable.  Additionally, the prosecutor's argument that Dr. Shomer had earned a "tremendous amount of money" as a defense expert was also a reasonable inference based on his average fee charged and the number of times he testified.

Moreover, prosecutors are allowed suggest that an expert witness is biased because he received payment for his testimony.  *United States v. Preciado-Gomez*, 529 F.2d 935, 942 (9th Cir. 1976) ("The existence of bias or prejudice of one who has expressed an expert opinion can always be examined into on cross-examination of such expert"); Christopher B. Mueller & Laird C. Kirkpatrick, *Federal Evidence*, § 6:78 (3d. ed. 2009) (noting that impeaching an expert by inquiring about payment for their testimony is a common and permissible tactic).  Accordingly, the prosecutor's comments regarding Dr. Shomer's fee were not improper.  The state court decision was not contrary to, or an unreasonable application of clearly established federal law, or based on an unreasonable determination of the facts in light of the evidence presented, and Garcia is not entitled to relief on this claim.

//

### iii.   The prosecutor's references to Dr. Shomer's testimony regarding "bright lights and proximity."

Garcia argues that the prosecutor mischaracterized Dr. Shomer's testimony and mislead the jury about Cruz's ability to view his assailant at the time of the crime.  Dr. Shomer testified as follows:

> Q: [the prosecutor] [Y]ou're not here to form any– offer any expert opinion on, for example, if we turn out the lights in this courtroom, it's dark except for one match, which one juror holds up, and I'm standing right here, you and I are also much less likely to recognize each other on a future occasion than if we had all the lights on in the courtroom, correct?
>
> A: Obviously
>
> Q: And you don't – the jury doesn't need an expert to tell them that, does it, either?
>
> A: Certainly not.  I'm not going to address any of those obvious issues. . .

(RT at 401.)

In his closing statement, the prosecutor argued that:

> I don't think it takes an expert, and Dr. Shomer admits it doesn't take an expert, to know that if you're right up in somebody's face with the lights on for a long period of time, you're much more likely to have an image implanted in your brain and in your memory than if you're in the dark, a long way away and for a very brief period of time.

(RT at 482-83.)

Garcia contends that the prosecutor's comments wrongly implied that Cruz had the opportunity to view his assailant up close under bright lights at the time of the crime, when in fact he only saw the assailant at nighttime from a distance.  The California Court of Appeal found that the prosecutor did not mischaracterize Dr. Shomer's testimony and that it was not reasonably likely that jurors interpreted the prosecutor's comment as Garcia suggests.  (Exhibit A at 7, *citing People v. Cole*, 33 Cal. 4th 1158, 1202-03 (2004) (a prosecutor's comments render a trial fundamentally unfair if it is reasonably likely the jurors construed of applied the remarks at issue in an objectionable fashion).)  As discussed above, prosecutors are permitted to draw reasonable inferences from the evidence and are allowed wide latitude in their closing statements.  *See Fields v. Brown*, 431 F.3d 1186, 1206 (9th Cir. 2005) (citations omitted).  The

**United States District Court**
For the Northern District of California

1    state court decision was not contrary to, or an unreasonable application of clearly established

2    federal law, or based on an unreasonable determination of the facts in light of the evidence

3    presented, and Garcia is not entitled to relief on this claim.

4              iv.    **The prosecutor's comments regarding Dr. Shomer's**
              **testimony regarding the effect of stress on ability to make an**
5              **accurate identification.**

6              During closing statements, the prosecutor discussed Dr. Shomer's testimony regarding

7    the effect of stress on a person's ability to make an accurate identification.  Garcia contends the

8    prosecutor mischaracterized Dr. Shomer's statements.  The prosecutor argued that, although Dr.

9    Shomer testified that stressful situations generally have a negative impact on a person's ability

10   to identify an assailant, "some very well-educated and well-trained and well-informed people

11   think that in some situations that a certain amount of stress actually increases your ability to

12   remember."  (RT at 485.)  Additionally, the prosecutor argued that the adrenaline surge that

13   occurs when a person is under stress might actually allow him or her to focus more acutely on

14   certain details of the situation and argued, in part:

15              [I]t seems reasonable to me, and I think it does to you as well, that if you
              really want to focus all of this extra attention on what's going to enable your
16              own survival, it's not going to be waiting for the barrel of the gun, projectile
              coming out of the gun.  It's looking at the facial expressions of the person
17              holding this gun.  Is this person an absolute wacko, you know ... somebody
              who you know is just going to wait for me to give me – in other words, look
18              at the expression.  You look in their eyes and you say is this person going to
              shoot me or not.
19

20   (RT at 485.)

21              The California Court of Appeal found that the prosecutor did not mischaracterize Dr.

22   Shomer's testimony.  The court noted that Dr. Shomer testified that a minority of experts in the

23   field of identification disagreed with his findings.  The court also cited a portion of Dr.

24   Shomer's testimony in which he stated:

25              [I]t's our brain, our brain recognizes this is a source of potential life-
              threatening stress and injury ... [a] gun is a different thing.  So it doesn't
26              matter exactly how big the barrel is nor not, if you recognize it as a gun, a
              weapon, you may be wrong but you think it's a gun, our entire body, our
27              nervous system, or physiology, *the flow of adrenaline*, everything in us
              works differently than if we see it as the analogy of a flower, something not
28              dangerous.

United States District Court

For the Northern District of California

1    (Exhibit A at 9 (emphasis in original).)

2         Based on a review of the record, it appears that the prosecutor's summary of Dr.

3    Shomer's testimony was somewhat inaccurate.  Dr. Shomer stated that a minority of experts

4    disagreed with his findings about the negative impact of stress on witness identifications, but he

5    did not testify that those experts agreed with the contrary position, *i.e.*, that stress increases

6    accuracy.  (*See generally* RT at 394-405.)  Dr. Shomer disagreed with the assertion that a study

7    conducted by Dr. Mishkin of the National Institute of Mental Health supported the prosecutor's

8    hypothesis.  (RT at 436-37.)  Dr. Shomer stated that there was "no data that Dr. Mishkin ever

9    accumulated to substantiate his speculation."  (RT at 437.)  Furthermore, although Dr. Shomer

10   testified that adrenaline can alter the way that a person observes aspects of a situation, he

11   testified that a person's tendency would be to focus more on the potentially harmful object than

12   the assailant.  He stated: "But once you focus in on that weapon, you're focused less on the

13   circumstances of where it is, who's holding it, what they look like.  It's far more functional to

14   pay attention to that weapon than it is to anything around it."  (RT at 419.)

15        However, despite the inaccuracies in the prosecutor's closing statement, Garcia has not

16   demonstrated that his due process rights were violated.  *See Johnson*, 63 F.3d at 929 (a

17   prosecutor's comments during trial violate due process only when, examined in the context of

18   the proceedings as a whole, they infected the trial with unfairness).  In this case, the

19   prosecutor's comments in his closing statement did not render the trial as a whole

20   fundamentally unfair.  The comments were brief, and the trial judge instructed the jury that

21   statements made by the attorneys during the trial are not evidence.  (RT at 556.)  It is presumed

22   that "jurors follow the court's instructions absent extraordinary circumstances."  *Tan*, 413 F.3d

23   at 1115.  The state court decision was not contrary to, or an unreasonable application of clearly

24   established federal law, or based on an unreasonable determination of the facts in light of the

25   evidence presented, and Garcia is not entitled to relief on this claim.

26   //

27   //

28   //

United States District Court
For the Northern District of California

**v.    The prosecutor's comments regarding Garcia's change in appearance in between photo line ups.**

During his closing argument, the prosecutor directed the jury's attention to a photo of Garcia shown to Cruz during the second photo line up and to a different photo of Garcia taken during the physical line up.  He argued that:

> I think you may notice that there's been a change in the facial hair of Jorge Garcia between the time that he's in the physical line up and the photo line up. You know, an attempt to change one's appearance, if you find that to be the case, would be an indication that you know there's some consciousness that he might be recognized.

(RT at 496.)

Garcia asserts that there was no support for the prosecutor's suggestion that his change in appearance stemmed from a desire to avoid recognition and that the argument was improper. He notes that there was no evidence presented at trial demonstrating that the photo used in the line up was taken at a time near or before the time of the shooting, that Garcia knew that his photo had been taken by the police, or that he had any knowledge that his photo had been used in a line up.

The California Court of Appeal held that Garcia's argument was based on a misapprehension of the prosecutor's statement.  The court noted that the prosecutor argued that Garcia had changed his appearance since the time of the photo line up, not since the time of the shooting.  Additionally, the court held that the prosecutor could properly argue that there was a change in appearance between the two photo line ups.  (Exhibit A at 11.)  The record demonstrates that the jury was provided with the photo line up and photos from the physical line up, from which they could draw their own conclusions about any changes in appearance. (RT at 338, 341-42, 356-57.)  Attorneys are allowed to draw inferences based on evidence presented at trial, and are given wide latitude in their closing statements. *See Fields*, 431 F.3d at 1206 (wide latitude) (citations omitted); *Atcheson*, 94 F.3d at 1244 (inferences). Additionally, even if there was no evidence about the date the photo in the line up was taken, and the prosecutor's statement was unsupported, the comment did not render the trial fundamentally unfair in violation of Garcia's due process rights.  *See Johnson*, 63 F.3d at 929.

13

United States District Court

For the Northern District of California

1   The prosecutor's comment was brief, the jurors were instructed that arguments of counsel were

2   not evidence, and there was other evidence supporting Garcia's conviction.  *See United States v.*

3   *Feldman*, 853 F.2d 648, 656 (9th Cir. 1988) ("Hard blows are permissible in closing arguments

4   and even when statements go beyond reasonable inferences made from the evidence, reversal is

5   proper only if they were likely to have prejudiced the defendant.").  The state court decision

6   was not contrary to, or an unreasonable application of clearly established federal law, or based

7   on an unreasonable determination of the facts in light of the evidence presented, and Garcia is

8   not entitled to relief on this claim.

9                    **vi.    The prosecutor's comment regarding the effect of morphine
                             on an initial incorrect identification.**

10

11          Garcia contends that the prosecutor argued incorrectly in closing statements that Cruz

12  was sedated on morphine when he initially identified someone other than Garcia as the person

13  who shot him.  Respondent argues that this claim was not presented in state court and, therefore,

14  is not exhausted.  The exhaustion doctrine requires that a petitioner provide the state court a fair

15  opportunity to act on his or her claims.  *See O'Sullivan v. Boerckel*, 526 U.S. 838, 844-45,

16  (1999).  A claim is fairly presented to the state courts when a petitioner references the specific

17  federal constitutional guarantee that was violated, as well as a statement of the facts that entitle

18  the petitioner to relief.  *Davis v. Silva*, 511 F.3d 1005, 1009 (9th Cir. 2008) (citing *Gray v.*

19  *Netherland*, 518 U.S. 152, 162-63 (1996)).  In order to exhaust a claim, a petitioner need not

20  "present every piece of evidence supporting his federal claims."  *Davis*, 511 F.3d at 1009

21  (quotations omitted).  Instead, it is sufficient for a petitioner to present "the operative facts, that

22  is, all the facts necessary to give application to the constitutional principle upon which [the

23  petitioner] relies."  *Id*. (quotations omitted).

24          In the Petition for Review Garcia filed in the California Supreme Court, he stated in

25  relevant part:

26          1.  Statement of Issues

27          1.  The prosecutor improperly referred to matters during closing argument
            that were outside the evidence presented at trial, misrepresented evidence
28          that had been presented at trial, and by doing so, violated petitioner's Fifth
            Amendment right to due process, by:

14

United States District Court

For the Northern District of California

1    ...

2        e. arguing that the complaining witness misidentified a non-suspect
         at the first photo lineup because CW was drugged on morphine at the
3        hospital, when the evidence showed that CW had been taken off morphine
         by the time he viewed the lineup.

4

5    (Respondent's Exhibit B (Petition for Review at 2).)  Respondent notes that the paragraph under

6    this subject heading on the initial misidentification of a non-suspect due to the effects of

7    morphine actually discusses a different issue.  (Respondent's Resp. to Order to Show Cause re

8    Exhaustion at 2.)  Garcia concedes that the paragraph relating to the first photo line up was

9    inadvertently omitted but contends that the issue was raised sufficiently elsewhere in the

10   petition.  (Garcia's Resp. to Order to Show Cause re Exhaustion at 2.)

11       The Court finds that Garcia fairly presented the issue to the state courts, and the claim is

12   exhausted.  The discussion of the claim in the statement of issues section of the petition stated

13   the specific constitutional right he claimed was violated, the Fifth Amendment right to due

14   process; and the operative facts underlying his claim, *i.e.*, that the prosecutor incorrectly argued

15   that the witness was under the influence of morphine when he misidentified a non-suspect.  This

16   is all that is required.  *See Davis*, 511 F.3d at 1009.

17       Because the California Supreme Court denied the Petition for Review without comment

18   and the Court of Appeal did not address the issue, the Court must conduct an independent

19   review of the record to determine if the state court clearly erred in its application of controlling

20   federal law.  *See Himes*, 336 F.3d at 853.  A review of the record demonstrates that Garcia is

21   not entitled to habeas relief based on this claim.

22       Garcia is correct that the prosecutor mis-identified the medication Cruz was taking at the

23   time of the first photo line up.  Cruz testified that he was initially given morphine for his pain,

24   but he was switched to Vicodin when he was transferred to a different hospital, where he met

25   with police and viewed the first photo line up.  (RT at 225-28.)  He also testified that because of

26   the effects of the medication, he "wasn't too sure" about the identification.  (RT at 228.)  A

27   police officer who spoke to Cruz on the same evening that the first photo line up was conducted

28   noted that "he was on lots of medication."  (RT at 321.)  The officer stated that he spoke briefly

1   with Cruz, "but he was under so much medication we didn't really want to go into details."  (RT

2   at 322.)  Cruz's medical records were admitted into evidence and available the jury.  (RT at

3   321-22.)  Additionally, the trial court instructed the jury that statements of counsel are not

4   evidence, and that they were free to give witness testimony whatever weight they felt it

5   deserved.  (RT at 556, 562.)  In light of the testimony and other evidence presented at trial and

6   the trial court's instructions, the Court finds that the prosecutor's mis-statement did not "so

7   infect[] the trial with unfairness as to make the resulting conviction a denial of due process."

8   *Darden*, 477 U.S. at 181 (quotations omitted).

9           **b.      Garcia is not entitled to habeas relief on his claims that the**
                       **prosecutor misstated the law.**
10

11          Garcia also claims that the prosecutor committed misconduct by inaccurately stating the

12   applicable law on several topics.  Garcia premises this claim on the following portions of the

13   prosecutor's closing argument.

14                  **i.      The prosecutor's argument regarding reliance on expertise of**
                             **other jurors in evaluating medical records.**
15

16          Garcia claims that the prosecutor improperly invited jurors to rely on the expertise of

17   other jurors in interpreting medical records introduced into evidence.  In discussing Cruz's

18   initial misidentification of a non-suspect during the first photo line up, the prosecutor stated:

19          So he's sedated over the course of the next few days.  He's, you know,
            testified I think that he was on [m]orphine.  You will be able to read these
20          medical records.  Now, obviously they will, you know, some of you have
            plenty of bad [*sic*] training on how to read medical records, you know, you
21          don't get to act as an expert witness in this case, but your background, training
            and experience certainly could be helpful to other jurors.
22

23   (RT at 491.)

24          The California Court of Appeal found that the prosecutor's comment was not improper.

25   It noted that he specifically told the jurors that they did not get to act as medical experts when

26   evaluating the evidence.  (Exhibit A at 13.)  The Ninth Circuit has held that although it is

27   improper for a juror to decide a case based on personal knowledge of facts specific to the

28   litigation, it is expected that jurors will bring their life experience to bear when evaluating the

United States District Court

For the Northern District of California

1    facts of a case. *Hard v. Burlington N. R.R.*, 870 F.2d 1454, 1462 (9th Cir. 1989) (finding no

2    juror misconduct entitling defendant to a new trial when a juror offered a basic understanding of

3    x-ray interpretation during deliberations). The state court decision was not contrary to, or an

4    unreasonable application of clearly established federal law, or based on an unreasonable

5    determination of the facts in light of the evidence presented, and Garcia is not entitled to relief

6    on this claim.

7              **ii.        The prosecutor's argument regarding reasonable doubt.**

8              During closing argument, the prosecutor addressed the concept of reasonable doubt.

9    After discussing the origins of the standard, he went on to explain:

10             What's reasonable doubt? Reasonable doubt is a doubt which is not possible
             and imaginary, but is rooted in some reason. Is rooted in some reason that is
11           based upon the law and the facts and the evidence that's been introduced to
             you here in open court and not based on speculation.
12

13   (RT at 498.)

14             Garcia claims that the prosecutor's argument was improper because the jury could have

15   understood that the defendant had to produce some evidence on which to base a doubt, shifting

16   the burden of proof away from the prosecution. The California Court of Appeal found no

17   misconduct, stating that prosecutor's comment correctly summarized the law. (Exhibit A at

18   13.) Even assuming, *arguendo*, that the prosecutor's comment could be interpreted to

19   improperly shift the burden of proof, Garcia still is not entitled to habeas relief. After closing

20   arguments were complete, the trial judge correctly instructed the jury on the reasonable doubt

21   standard and instructed the jury that the prosecution had the burden of proving beyond a

22   reasonable doubt that the defendant was the individual who committed the crime. (RT at 564-

23   65.) It is presumed that "jurors follow the court's instructions absent extraordinary

24   circumstances." *Tan*, 413 F.3d at 1115. The state court decision was not contrary to, or an

25   unreasonable application of clearly established federal law, or based on an unreasonable

26   determination of the facts in light of the evidence presented, and Garcia is not entitled to relief

27   on this claim.

28   //

                                                    17

1    //

2                    **iii.    The prosecutor's argument regarding specific intent.**

3         Garcia contends that the prosecutor's statement that "What you're intending to do is also

4    always shown by the nature and consequences of the act that you do," was a violation of due

5    process because it shifted the burden of proof on an element of the crime.  In support of his

6    argument, Garcia cites *Sandstrom v. Montana*, 442 U.S. 510, 524 (1979).  In that case, the

7    Supreme Court held that a jury instruction stating that "the law *presumes* that a person intends

8    the ordinary consequences of his voluntary acts," violated due process, because the instruction

9    could be interpreted by a reasonable juror to relieve the state of the burden of proof on the

10   critical question of the defendant's state of mind.  *Id*. at 512 (emphasis added).

11        The California Court of Appeal found that the prosecutor's comments did not violate

12   due process.  The court distinguished *Sandstrom*, noting that remark was made during closing

13   statements, not as part of the jury instructions, and made no mention of a presumption.  (Exhbit

14   A at 14.)  The court held that it was not reasonably likely that "jurors would have interpreted

15   this comment as a mandatory presumption on the issue of intent."  (*Id.*)  The court correctly

16   interpreted *Sandstrom*.  *See, e.g.*, *Clark v. Arizona*, 548 U.S. 735, 767 n.36 (2006) (noting that

17   "due process forbids use of presumption that relieves the prosecution of the burden of proving

18   mental state by inference of intent from an act"); *Medley v. Runnels*, 506 F.3d 857, 862 (9th Cir.

19   2007) ("Trial courts may not create mandatory presumptions which relieve the prosecution of

20   its burden to prove facts to the jury beyond a reasonable doubt.").  The state court decision was

21   not contrary to, or an unreasonable application of clearly established federal law, or based on an

22   unreasonable determination of the facts in light of the evidence presented, and Garcia is not

23   entitled to relief on this claim.

24   **C.    Garcia is Not Entitled Habeas Relief to His Claim for Relief Based on Ineffective
             Assistance of Counsel.**

25        Garcia argues that the failure of trial counsel to object to the prosecutor's closing

26   statement constituted ineffective assistance of counsel.  He also requests an evidentiary hearing

27   to determine whether the failure to object was the result of counsel's deficient performance, or a

28   legitimate tactical decision.  Because the last reasoned state court decision did not address this

United States District Court

For the Northern District of California

18

1    claim, the Court conducts an independent review of the record to determine whether the state

2    court clearly erred in its application of federal law.  *See Himes*, 336 F.3d at 853.

3          **1.**        **Legal Standard.**

4          A claim of ineffective assistance of counsel is cognizable as a claim of denial of the

5    Sixth Amendment right to counsel, which guarantees not only assistance, but effective

6    assistance, of counsel.  *Strickland v. Washington*, 466 U.S. 668, 686 (1984).  The benchmark for

7    judging any claim of ineffectiveness must be whether counsel's conduct so undermined the

8    proper functioning of the adversarial process that the trial cannot be relied upon as having

9    produced a just result.  *Id*.  The right to effective assistance counsel applies to the performance

10   of both retained and appointed counsel without distinction.  *See Cuyler v. Sullivan*, 446 U.S.

11   335, 344-45 (1980).

12         In order to prevail on a Sixth Amendment ineffectiveness of counsel claim, Garcia must

13   establish two things.  First, he must establish that counsel's performance was deficient, *i.e.*, that

14   it fell below an "objective standard of reasonableness" under prevailing professional norms.

15   *Strickland*, 466 U.S. at 687-88.  Second, he must establish that he was prejudiced by counsel's

16   deficient performance, *i.e.*, that "there is a reasonable probability that, but for counsel's

17   unprofessional errors, the result of the proceeding would have been different."  *Id*. at 694.  A

18   reasonable probability is a probability sufficient to undermine confidence in the outcome.  *Id*.

19   A court need not determine whether counsel's performance was deficient before examining the

20   prejudice suffered by the defendant as the result of the alleged deficiencies.  *Strickland*, 466

21   U.S. at 697; *Williams v. Calderon*, 52 F.3d 1465, 1470 & n.3 (9th Cir. 1995) (applauding

22   district court's refusal to consider whether counsel's conduct was deficient after determining that

23   petitioner could not establish prejudice), *cert. denied*, 516 U.S. 1124 (1996).

24         **2.**        **Analysis.**

25         Garcia's claim for ineffective assistance of counsel fails because he has not

26   demonstrated a reasonable probability that but for his counsel's failure to object, the result of

27   the trial would have been different.  *See Strickland*, 466 U.S. at 694.  In support of his argument

28   that his counsel's conduct was prejudicial, Garcia cites to *People v. Donaldson*, 93 Cal. App.

United States District Court
For the Northern District of California

19

United States District Court

For the Northern District of California

1   4th 916, 932 (2001).  He argues that the *Donaldson* court found that failure to object to similar

2   prosecutorial errors was prejudicial.  However, *Donaldson* is readily distinguishable from this

3   case.  In *Donaldson*, the prosecutor engaged in a variety of impermissible acts, including calling

4   herself as a witness to offer testimony impeaching the exculpatory testimony of another key

5   witness.  *Id*. at 923-26.  In addition to numerous other errors, defense counsel failed to object to

6   the prosecutor calling herself to the stand, to certain objectionable questions she answered

7   during her testimony, and to impermissible arguments she made during closing statements.  *Id*.

8   at 932.  The court held that these errors created a reasonable probability that the outcome of the

9   trial would have been more favorable to the defendant if his counsel had performed

10  competently.  *Id*.

11          The failure of Garcia's counsel to object to the prosecutor's closing statement did not

12  create the same possibility of prejudice.  Indeed, as discussed above, most of the statements

13  about which Garcia complains do not amount to prosecutorial misconduct.  Moreover, Garcia

14  has failed to demonstrate that he suffered any prejudice from either the erroneous reference to

15  Cruz being on morphine at the time he identified a non-suspect or the prosecutor's inaccurate

16  summary of the expert testimony.  Although these references mis-stated the evidence that had

17  been introduced during the trial, the judge properly instructed the jury that statements of

18  counsel are not evidence, and the jurors are presumed to have followed the court's instructions.

19  *Tan*, 413 F.3d at 1115.  Therefore, Garcia is not entitled to habeas relief based on ineffective

20  assistance of counsel.

21          Garcia's request for an evidentiary hearing is also denied.  Even assuming that Garcia

22  has not failed to develop his claim in state court, an evidentiary hearing on a habeas corpus

23  petition is only required when Garcia's allegations, if proved, would entitle him to relief.

24  *Turner v. Marshall*, 63 F.3d 807, 815 (9th Cir. 1995) (quotation omitted), *overruled on other*

25  *grounds Tolbert v. Page*, 182 F.3d 677 (9th Cir. 1999).  Here, even if Garcia was able to

26  demonstrate that his counsel's failure to object was the result of deficient performance, he

27  would not be entitled to relief because he has failed to demonstrate that he suffered any

28  prejudice.

**D.      Garcia Is Not Entitled to Habeas Relief Based on His Claim of Cumulative Error.**

Finally, Garcia contends that the numerous errors discussed above resulted in cumulative error.  As discussed above, however, there was no violation of Garcia's federal rights during his trial.  Thus, he is not entitled to relief based on his claim of cumulative error. *Rupe v. Wood*, 93 F.3d 1434, 1445 (9th Cir. 1996).

**CONCLUSION**

For the foregoing reasons, Garcia's Petition for a Writ of Habeas Corpus is DENIED.  A separate Judgment shall be entered, and the Clerk is directed to close the file.

**IT IS SO ORDERED.**

1

2   Dated: November 30, 2009

_____

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California